**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**ANTSY LABS, LLC;**
**ZURU INC.,**

                    **Plaintiffs,**

**v.**                                              **Case No. 22-cv-01801**


**THE INDIVIDUALS, CORPORATIONS,**
**LIMITED LIABILITY COMPANIES, PARTNERSHIPS**
**AND**
**UNINCORPORATED ASSOCIATIONS IDENTIFIED**
**ON SCHEDULE "A" TO THE COMPLAINT,**

                    **Defendants.**


**DEFENDANT'S, SHEEBO[1] AND/OR 5050 STYLE, MOTION TO DISSOLVE**
**INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF**

Defendant SHEEBO and/or 5050 STYLE (hereinafter referred to as "5050 STYLE" or "Defendant"), hereby moves for an order dissolving the temporary restraining orders obtained by Plaintiffs, Antsy Labs, LLC and Zuru, Inc. (hereinafter collectively referred to as "PLAINTIFFS"), under seal, on April 26 and 28, 2022 [DE 16 and 17], which was extended on May 10, 2022 through May 26, 2022 [DE 22], (collectively referred to as "Injunction"), and as grounds, states as follows:

**I.   INTRODUCTION.**

The Court entered a temporary restraining order without notice against the Defendant on April 26 and 28, 2022 [DE 16 and 17], and extended same on May 10th. 5050 STYLE never

---

[1] The brand store name is Sheebo, and the Seller's name is 5050 Style.

received any notice of the initial injunction hearings, nor were they given any opportunity to be heard.[2]

Here, Defendant is a New York company, not a Chinese company, as Plaintiff asserts in its Complaint. [DE 1, paragraph 14]. Plaintiff has painted all of the Defendants, including the moving Defendant, as Chinese knock-off artists, and have made a rather racially biased assertion that all Chinese Amazon sellers are counterfeiters and infringers worthy of being enjoined, without notice and without an opportunity to be heard.

This Defendant is reputable, and sells non-counterfeiting, non-infringing goods on their store front that in no way infringes that of the PLAINTIFFS as they assert in their Complaint. Thus, the perception must be that this Defendant is law abiding, and respectful of US Intellectual Property rights, despite the opposite claims made by Plaintiff with no basis in fact, and was done so to convince the Court that the moving Defendant is worthy of being enjoined without the opportunity to be heard or to present their defenses. The Defendant has been subjected to the most draconian remedy they could suffer, in a civil case, as initially all of their assets were frozen, and they were accused of a racial malfeasance by allegedly being a Chinese company.

The mere fact that Defendant sold non-counterfeiting, non-infringing goods should be more than enough for the Court to re-consider both the intention of the Defendant, and the factors associated with Plaintiff prevailing on the merits. This Court has great discretion in weighing the factors for an injunction.

As a threshold matter, the Injunction must be dissolved because Plaintiff obtained it without notice and opportunity for a hearing for the Defendants. It is well-settled that "a court may not issue a temporary injunction without advance notice to the adverse party." Wheeler v.

---

[2] 5050 STYLE's received notice of the injunction on or about April 28, 2022 when it's accounts were frozen and it received a notice from Amazon.

Talbot, 770 F.3d 550, 552 (7th Cir. 2014) (citing Fed. R. Civ. P. 65(a)(1)); see also Medeco Sec.
Locks, Inc. v. Swiderek, 680 F.2d 37, 38 (7th Cir. 1981) ("Rule 65 provides that no temporary
injunction shall be issued without notice to the adverse party. Notice implies the opportunity to
be heard. Hearing requires trial on the issue or issues of fact. Trial on the issue of fact
necessitates opportunity to present evidence and not by only one side of the controversy.") While
this reason alone is sufficient to warrant a dissolution of the injunction, Plaintiff also fail on the
merits.

In today's world of e-commerce sales, there is truly only one place that a small business
must have a sales presence, and it is on the Amazon platform. Amazon has a monopolistic
position in this marketplace. If you do not, or cannot, sell on Amazon as a small business, then
you are a micro business, a hobbyist. Amazon sellers are subject to Amazon's rules, and
Amazon, as a marketplace does not have a developed Intellectual Property forum to hear and
decide disputes, although Amazon is making efforts to develop one.

Now, intellectual property owners are only required to file a formal complaint, and then
Amazon's policy requires that once noticed, the seller must work out the complaint with the
Complainant, and if it is not able to do so, the product or seller gets de-listed. This policy favors
intellectual property owners, and Amazon is rife with scofflaws, counterfeiters, and infringers.
Also, the Amazon's complaint system serves as an unfair competitive advantage for predatory
sellers who make invalid claims of infringement, and the complaint itself, even if invalid, serves
to stifle competition and to eliminate competitors, as Amazon does not validate the merit of the
infringement claim.

This case is one where an honest, hardworking, highly rated, consumer valued company,
in existence since 2019 has a TRO entered against them, and not because their products infringe

that of Plaintiff's trademark and/or patent, but merely because Plaintiff has filed a complaint that it will not rescind, and it was able to obtain injunctive relief where the Defendant was not able to represent themselves to be heard. It should also be noted that Defendant has sold the alleged infringing product only a few times and has ceased selling it, and when it was sold Defendant has advised that there was only an approximate store's profit of $389. See Declaration ("Decl.") of Shaoqiang Lin ("Lin"), paragraph 6.

Many IP claims filed with Amazon are legitimate, but the illegitimate claims require Court intervention. The alternative is to lose the business, sometimes for good, and force so many family run businesses with limited resources to unfairly suffer the wrath of anti-competitive behavior with no adequate remedy at law. Without casting aspersions on Plaintiff's motives, its claim is per se anti-competitive, because the products sold by 5050 STYLE do not infringe Plaintiff's patented design. Thus, Plaintiff has petitioned the Court to preliminarily enjoin Defendant in an attempt to prevent Defendant from selling their non-infringing products[3] and to continue the freeze on their assets pending the ultimate resolution of this proceeding.

Plaintiff fails to show money damages are insufficient. Here, Plaintiff provides cursory infringement contentions, but the core of their argument is purported harm that cannot be remedied with money damages for two primary reasons. First, that Defendant's allegedly inferior products place PLAINTIFFS's brand goodwill and reputation at immediate risk. Critically missing from Plaintiff's motion is any showing of *evidence* of such imminent harm caused by the 5050 STYLE's products. There is no evidence that either Defendant has misbranded their products with PLAINTIFFS brand, PLAINTIFFS, logo or trademark, or in fact,

---

[3] Currently Defendant's storefront remains open, but for how long remains to be seen.

the opposite is true. Nor is there any allegation that Defendant has labeled their products with Plaintiff's trademark.

Plaintiff's next argument for harm that cannot be cured with monetary damages is the speculation that Defendant will be unable or unwilling to satisfy any judgment simply because they are Chinese. The law supports no such premise, nor is it true relative to this Defendant. Defendant declares that they can pay money damages. Whether a Defendant resides in the US, while relevant, is but one factor to be determined, and must be coupled with the likelihood of success on the merits, so much so that the Court may determine as a matter of law that Defendants do not infringe. Plaintiff therefore fails to establish this essential element necessary for an injunction. In fairness, there are many US based companies that may or may not be able to pay monetary damages, and proof of the ability to pay monetary damages as a condition to avoiding an injunction is not a pre-requisite. Simply, whether monetary damages may satisfy Plaintiff in the end if they prevail is the relevant inquiry, and it must be weighed as a factor against whether injunctive relief is required to satisfy Plaintiff's interests. It is Plaintiff's burden to establish why monetary damages will not suffice, and they have not done so.

The relief granted in the injunction is too broad. Plaintiff knew, or should have known in light of its apparently exhaustive investigation, that Defendant's Amazon storefront sold valid, non-counterfeit, non-infringing products years ago. Yet, Plaintiff still sought and obtained a blanket injunction over all Defendant's assets from sales of goods that were not subject to infringement claims, as Defendant's sales of allegedly infringing products was less than .01% of all of its sales as it only sold alleged infringing products for a total profit of $389. (Decl. of Lin ¶6).

Here, without explanation, Plaintiff sought out "Chinese" companies for injunction but not certain U.S. entities doing the same thing they enjoined. This further belies their claim of irreparable harm. Of course, had they also sued additional U.S. sellers—or revealed to the Court alleged infringing products were sold by U.S. entities in good corporate standing—Plaintiff would have been unable to pepper their papers with numerous pejoratives about "Chinese" companies. Defendant has already suffered substantial hardship because of the Injunction.

In short, it appears that Plaintiff does not have, and never had, a basis for obtaining an injunction. Rather, Plaintiff far from fearing irreparable harm, simply wanted to deal a well-timed and forceful blow to its competitors before they were given the opportunity to defend themselves. The Injunction should be immediately dissolved.

## II.    LEGAL STANDARD.

"[A] temporary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Goodman v. Illinois Dep't of Fin. & Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis original)). Because an injunction is an extraordinary remedy, the court's power to issue such relief should be exercised sparingly. Rizzo v. Goode, 423 U.S. 362, 378 (1976).

A plaintiff seeking preliminary injunctive relief must establish that: "(1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." Long v. Bd. of Educ., Dist. 128, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). "[B]urdens at the temporary injunction stage track the burdens at trial." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006). Thus, the movant "bears the burden of persuasion with regard to each factor in the

preliminary injunctive relief analysis," and if it "fails to meet ***just one*** of the prerequisites for a temporary injunction, the injunction ***must*** be denied." Smith v. Foster, 2016 WL 2593957, at *3 (E.D. Wis. May 5, 2016) (quoting Cox v. City of Chicago, 868 F.2d 217, 219-23 (7th Cir.1989)) (emphasis added). In order to meet its burden, Plaintiffs must support their motion "with evidence" to satisfy "each of the[] elements" required to obtain injunctive relief. Merritte v. Kessell, 2015 WL 1775777, at *2 (S.D. Ill. Apr. 16, 2015); *see also, e.g.,* Air Serv Corp. v. Serv. Emps. Int'l Union, Local 1, 2016 WL 7034136, at *1 (N.D. Ill. Dec. 2, 2016) (noting that the moving party "***must show*** that it will suffer irreparable harm.") (emphasis added). If the movant meets these requirements, the Court must then weigh, using a sliding scale, the harm the movant will suffer without an injunction against the harm the non-movant will suffer if an injunction is issued. The **more likely the movant is to win, the less heavily need the balance of harm weigh in its favor**; conversely, the less likely the movant is to win, the more the balance must weigh in its favor. Judge v. Quinn, 612 F.3d 537, 546 (7th Cir. 2010). Such injunctive relief is "never awarded as of right," and the Court "must balance the competing claims of injury and must consider the effect on each party." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008).

## III.    ARGUMENT.

### A.    Plaintiff obtained the Temporary injunction without Notice to Defendant.

Prior to granting a temporary injunction, notice to the adverse party is required. Fed. R. Civ. P. 65(a)(1). It is axiomatic both in the Seventh Circuit and throughout the country, that Rule 65(a)(1) of the Federal Rules of Civil Procedure requires "adverse parties receive notice before temporary injunctions are *issued*." Wheeler, 770 F.3d 550, at 552 (emphasis original); *see also* Consolidation Coal Co. v. Disabled Miners of S. West Virginia, 442 F.2d 1261, 1269 (4th Cir.

1971) ("plaintiffs obtained an *ex parte* temporary injunction in a case in which there were sharply disputed questions of fact and of law. This was manifestly error, because Rule 65(a)(1) is explicit that no temporary injunction shall be issued without notice to the adverse party.") (internal citations omitted).

Here, no defendant was served with advance notice of the preliminary injunctions or afforded an opportunity for a hearing in this matter. Plaintiff did not satisfy the notice requirement of Rule 65(a)(1). For this reason alone, the Injunction must be dissolved.

**B.** **Plaintiff Cannot Show Irreparable Harm.**

On the merits, Plaintiff failed to show the immediate irreparable harm required to justify the "extraordinary and drastic," remedy of a temporary injunction. Goodman, 430 F.3d at 437; *see also* Abbott Labs. v. Sandoz, Inc., 2006 WL 3718025, at *1 (N.D. Ill. Dec. 15, 2006); David White Instruments, LLC v. TLZ, Inc., 2002 WL 31741235, at *2 (N.D. Ill. Dec. 4, 2002).

**1.** **Plaintiff Has an Adequate Remedy at Law.**

The Court should dissolve the Injunction because Plaintiff failed to demonstrate that they do not have adequate remedy at law. Conclusory or speculative contentions are insufficient to demonstrate irreparable harm. *See, e.g.,* E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co., 414 F.3d 700, 704-06 (7th Cir. 2005) (stating that "speculative injuries do not justify" granting injunctive relief, and that a moving party "cannot obtain a temporary injunction by speculating about hypothetical future injuries"). Rather, Plaintiff's "evidence must demonstrate that [it] ha[s] carried [its] burden 'that irreparable injury is likely' — not just possible — 'in the absence of an injunction.'" Mich. v. U.S. Army Corps of Eng'rs, No. 10-CV-4457, 2010 WL 5018559 at *24 (N.D. Ill. Dec. 2, 2010). Here, Plaintiff conclusively claimed a

loss of sales and market share, but proffered no evidence of specific instances of lost sales that are attributable to the Moving Defendant.

But even assuming Plaintiff could prove that they were losing sales due to the Moving Defendant's conduct, the law is well-established that if "losses are purely financial, easily measured, and readily compensated[,] [t]here is . . . no showing of irreparable harm, and on this ground alone the temporary injunction should [be] denied." Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc., 255 F.3d 460, 463 (7th Cir. 2001) (internal citations omitted) (holding that movant's alleged harm sounded in lost profits, which "ha[d] not fallen to a point that threatens [the movant's] solvency," and thus did not constitute irreparable harm). The percentage of Amazon sales revenue that Defendant derives from sales of the accused product is way less than one percent (1%). (Decl. ¶6). Thus, if this Court dissolves the Injunction, and it is later determined that Defendant were not permitted to sell the alleged infringing products, Plaintiff can still be made whole by recovering any economic loss. Micro Data Base Sys., Inc. v. Nellcor Puritan Bennett, Inc., 165 F.3d 1154, 1157 (7th Cir. 1999) (no irreparable harm if "only money is at issue.")

Further, Plaintiff attacks against Chinese companies, and, in commingling a host of defendants without distinction, attempts to generalize the conduct of some defendants to all Defendants. It is axiomatic that attempts to plead "guilt by association is impermissible." In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 664 (S.D.N.Y. 2017); United States v. Jones, 713 F.3d 336, 350 (7th Cir. 2013) (courts cannot "endorse the impermissible inferences of guilt by association or mere presence."); McGhee v. Joutras, 1996 WL 706919, at *5 (N.D. Ill. Dec. 5, 1996) (rejecting "impermissible guilt-by-association premise that fuels each of [a party's] arguments."). On these fact particularly, Defendant is selling non-counterfeit, non-infringing

items, thus, such representations as to Defendant's conduct and motives is simply unsubstantiated and inapplicable.

In alleging damage to the goodwill and reputation of the PLAINTIFFS brand Plaintiff simply *asserted*, without identifying the particular defendant that "Defendants" sales are deceiving unknowing consumers and going to great lengths to "conceal both their identities and full scope and interworking of their illegal operation. Complaint, DE 1. This is simply not true. Defendant's store front has been in existence since 2019 and has an impeccable rating.

While harm to goodwill can be an irreparable injury in certain circumstances, the "cases where courts have found irreparable harm from a loss of goodwill or business relationships have involved situations where the dispute between the parties leaves one party unable to provide its product to its customers." Kreg Therapeutics, Inc. v. VitalGo, Inc., 2011 WL 5325545, at *6 (N.D. Ill. Nov. 3, 2011). In this case, Plaintiffs have not alleged—nor can they—that they will be unable to provide PLAINTIFFS products to customers because of Defendant's conduct. Indeed, far from harming PLAINTIFFS, Defendant's legitimate competition is no basis for the "drastic" imposition of an Injunction.

Third, Plaintiffs' assertion that "Defendants" are unlikely to be able to satisfy a judgment is pure, unsupported speculation. "In saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). In Lin's Declaration, he states that they have made approximately $389 in profit from selling the allegedly infringing products, and that is less than 0.01% of its sales. Decl. 6. There is thus many thousands of dollars in sales made by Defendant, evidence in support of a business that not only thrives in the American market, but relies on it.

To be subject to a potential damages award does not break Defendant, and there is no evidence to support an inability to make good on a remedy at law.   Given that patent damages generally do not exceed a defendant's profits, Defendant has more than enough resources to satisfy any potential money judgment in this case as funds in excess of $24,000 are currently frozen pursuant to this injunction. (Decl. ¶7).  Plaintiff argued that because Defendants are foreign entities whose true identities remain unknown, any monetary judgement may be difficult, if not impossible, to collect. With respect to Defendant, they have not run, and they have availed themselves to the American Courts.

Plaintiff also speculated in seeking and extending the TRO that Defendants would evade the legal process  and continue to sell infringing knock-offs through Amazon under a different alias, as well as move any assets from their financial accounts to off-shore bank accounts. Respectfully, it takes time to build an Amazon storefront that can generate the kind of consistently good reviews and sales in the range of the Defendants' stores, and they do not intend and cannot afford to just cut loose and run. Finally, the same substantial revenues generated from in the U.S. market means that the Defendant cannot afford to flout a U.S. federal court's judgment at a cost of giving up this entire market.  There is no justification for finding that Plaintiffs would be unable to collect on a monetary judgment in this case.

In sum, Plaintiffs' failure to show irreparable harm and inadequacy of remedy at law obviates any need for the Court to reach the remaining factors for considering injunctive relief. *See* Smith, 2016 Abbott Labs., WL 2593957, at *3; 2006 WL 3718025, at *2; David White Instruments, 2002 WL 31741235, at *2.

**The Balance of Harms Tilts Sharply in Defendants' Favor.**

The balance of harms weighs stronger in favor of Moving Defendant. Plaintiff cannot dispute that Defendant sells substantial amounts of products that are not being accused in this action.   The injunction that the Defendant seeks to dissolve has <u>entirely</u> frozen their respective Amazon accounts, precluding the receipt of <u>any</u> frozen sales revenue—including revenue that is not associated with their sales of the accused Products —and, in turn, hindering the payment of creditors with such expected, earned revenue. There is no basis for Moving Defendant's proceeds from non-accused products to be frozen. And, there is no indication that Amazon can partially unfreeze the Moving Defendant's assets—let alone do so quickly.

Plaintiff has unfairly and unreasonably blind-sided the Defendant by crippling their Amazon-dependent financial operations without due process. It is anti-competitive.   Thus, Plaintiff cannot "me[e]t their burden of showing that the harm [it] will suffer if the injunction is denied is substantially greater than the harm [the Defendants] would suffer if the injunction were granted." <u>Kastanis v. Eggstacy LLC</u>, 752 F. Supp. 2d 842, 858-59 (N.D. Ill. 2010). Indeed, in obtaining the temporary injunction, it does not appear that the substantial harm to the Defendant was even considered.

As set forth above, it takes time to build up an Amazon storefront, and every day Defendant's assets are frozen is one more day that they drop in Amazon search rankings. Far from selling "knock-offs" and "low quality" products, Defendant sells high quality products and has been selling for years.   Defendant is not selling PLAINTIFFS's products or otherwise deceiving the consuming public. The injunction is doing harm to Defendant's goodwill, not the other way around.

**C.     <u>If This Court Deems It Necessary to Maintain the Temporary injunction, Plaintiff Should Be Required to Post a Bond.</u>**

A bond is a pre-condition to temporary injunction relief for the payment of "costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also* Mead Johnson & Co. v. Abbott Labs., 209 F.3d 1032, 1033 (7th Cir. 2000). Because "[a] party injured by an erroneous temporary injunction is entitled to be made whole," the bond must be high enough to cover any losses the defendant incurs in the event the temporary injunction was erroneously entered. *See* Roche Diagnostics Corp. v. Med. Automation Sys., Inc., 646 F.3d 424, 428 (7th Cir. 2011) ("Judges [ ] should take care that the bond is set high enough to cover the losses that their handiwork could cause. A limit of zero—the upshot of an injunction without a bond—is bound to be low."). Accordingly, the bond amount must adequately cover the potential harm to the enjoined party. Fed. R. Civ. P. 65(c). Setting a bond amount is not an exact science, however, "[c]ourts generally err on the high side when setting bond because setting bond too high is not a serious error and 'damages for an erroneous temporary injunction cannot exceed the amount of the bond.'" Stuller, Inc. v. Steak N Shake Enters., Inc., 2011 WL 2473330, at *13 (C.D. Ill. June 22, 2011).

In the present case, there is zero basis to maintain a freeze over proceeds from the non-infringing products. As to the products alleged to be infringing, they should also be unfrozen because Defendant can pay money damages. However, should the Court desire to maintain an injunction, then a bond is necessary to "cover the possible damages and costs" to Defendants. Fed.R.Civ.P. 65(c). The bond should be at least $100,000.00.

## The Court May Make Infringement Determinations.

The Court can simply compare the designs, and determine that there is simply no infringement as a matter of law. Such a determination renders the other factors as moot. A

district court can issue 'tentative' or 'rolling' claim constructions in a temporary injunction proceeding. <u>Oakley, Inc. v. Sunglass Hut Int'l</u>, 316 F.3d 1331, 1345 n.3 (Fed. Cir. 2003).

If the Court determines that there is simply no infringement as a matter of law, after reviewing the claims and applying them to the allegedly infringing device, then to force Defendant to suffer business losses, closing of the business, lost profits, and lost goodwill, is unjust. In a closer case, the outcome should require further analysis. In this case, non-infringement is clear on its face.

**D.  <u>The Interests of The Public Weigh in Favor of Plaintiff.</u>**

The interest in the public being able to fairly purchase competing products, through choice and novel design, should be supported. Defendant is a highly ranked seller. The consuming public scours Amazon listings looking for quality products and fair prices. When doing so, they find Defendant's products. This threatens Plaintiff. However, it is the public interest that is tantamount to Plaintiff. Fair play and competition weigh in favor of the public interest.

**IV.  CONCLUSION.**

As this Court has observed, "ex parte temporary restraining orders are vulnerable to abuse," and thus, "the safeguards embodied in Federal Rule of Civil Procedure 65(b) must be scrupulously honored." <u>PaineWebber Inc. v. Can Am Fin. Grp., Ltd</u>., 1987 WL 16012, at *1 (N.D. Ill. Aug. 19, 1987) (citing 11 WRIGHT & MILLER, FED. PRAC. & PROC. § 2952 (1973)). Here, that was not done. Defendant respectfully requests that this Court dissolve the temporary injunction, and grant Defendant such other and further relief as this Court deems appropriate, including an Order to Amazon to release Defendant's funds. Lastly, Plaintiff should be required to post a bond of at least $100,000.00.

14

Dated: May 25, 2022.                    Respectfully Submitted,

                                        /s/Cory Rosenbaum
                                        Rosenbaum, Famularo & Segal, P.C.
                                        138A East Park Avenue
                                        Long Beach, New York 11561
                                        212.321.5080
                                        cjr@Amazonsellerslawyer.com


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

this 25th day of May on Christopher Tom at CTom@Thoits.com,  Harry Moren

HMoren@Thoits.com  and David Hutchinson at DHutchinson@Thoits.com.

                                        By: Cory Rosenbaum